641 So.2d 15 (1994)
Arthur Lee IVY
v.
STATE of Mississippi.
No. 91-KA-0520.
Supreme Court of Mississippi.
July 21, 1994.
*16 Laurel G. Weir, Thomas L. Booker, Jr., Weir & Booker, Philadelphia, for appellant.
Michael C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
PITTMAN, Justice, for the Court:

STATEMENT OF THE CASE
On April 25, 1990, Arthur Lee Ivy was indicted pursuant to § 41-29-139 of Mississippi Code Annotated for the sale of controlled substance, namely "crack" cocaine to Jimmy Cole, an informant for the City of Meridian Police Department. After an initial hearing, Ivy agreed to waive the preliminary hearing otherwise required by Rules 1.05 and 1.07 of the U.C.R.C.C.P. The trial court issued the Order of Arraignment and set trial for July 26, 1990. Upon Motion, Ivy's initial appointed attorney was allowed to withdraw as counsel and Ivy's current counsel was substituted therefore. Ivy's replacement counsel also filed a Motion to Withdraw as Attorney for Ivy and for the Court to Appoint Competent Counsel for Ivy.
A trial on the merits was held on April 15th and 16th, 1991. After hearing all the evidence and being instructed, the jury returned with a verdict of guilty.[1]
On April 16, 1991, Ivy moved under the Rules for a J.N.O.V. or alternatively a New Trial, said Motion being denied by the trial court on the same day.
Thereafter a judgment of conviction was entered. In addition, the judge requested a pre-sentence investigation report be submitted to him prior to the sentencing hearing and set May 8, 1991, for the sentencing hearing.
*17 Before issuing sentence on May 8, 1991, the court ruled that Mr. Weir and Mr. Booker would not be released as counsel for Ivy. However, at the close of the hearing, the judge stated that if Ivy retained other counsel, he would release Mr. Weir and Mr. Booker for purposes of appeal. After hearing additional testimony from the attorneys and considering the pre-sentence investigation report, the court entered its Sentencing Order. The Order required Ivy to serve fifteen (15) years in the custody of the Mississippi Department of Corrections and also ordered him to pay a fine in the sum of $2000.00, a crime lab fee of $100.00 and court costs in the amount of $164.50, "all to be paid as a condition to parole, should he make parole, or within 60 days of his release should he `flat-time' his sentence."
On May 13, 1991, Ivy filed another Motion for J.N.O.V. or in the alternative for a New Trial, said Motion being overruled by the court on the same day.
Aggrieved by the verdict and sentence of the lower court, Ivy thereafter, on May 13, 1991, filed his Notice of Appeal to this Court. While Ivy assigns numerous errors, only one merits discussion:
I. DID THE LOWER COURT COMMIT REVERSIBLE ERROR IN REFUSING TO PERMIT THE IMPEACHMENT STATEMENT OF JIMMY COLE TO BE RECEIVED AS EVIDENCE VIA TESTIMONY BY DEFENDANT'S ATTORNEY?
Finding that the lower court incorrectly applied the holding of Pittman v. Currie, we reverse and remand for a new trial.

STATEMENT OF THE FACTS
On January 18, 1990, Officers Jean Whalen and Karl Merchant arranged to use Jimmy Cole in order to effect a "controlled buy" from Arthur Ivy. In December of 1989, Cole had been charged with a traffic violation/misdemeanor and the department assisted him with that charge in exchange for his services as an informant.
Officer Jean Whalen testified to the procedure utilized to effect the buy. Prior to going to Ivy's home, Officer Merchant stripsearched Cole. No drugs, weapons or money were found in Cole's possession. Cole was given three (3) twenty dollar bills with which to make the purchase. These bills were first photocopied to verify serial numbers and the copy was signed by Whalen and Cole. The officers and Cole then proceeded to Ivy's home on 1213 33rd Avenue in Meridian. The officers were able to watch Cole the entire time except for the 2-3 minutes when Cole was inside Ivy's home. When Cole returned to the officers' car, he handed them three (3) rocks which appeared to be crack cocaine. Subsequent lab and field testing confirmed that the substance was crack cocaine. After returning to the station, Cole relayed the exact events to Whalen. Whalen in turn typed up this as a formal statement, which both Cole and Whalen signed. A search warrant was then obtained for Ivy's home. The search took place and Ivy was arrested while the search was effected.[2] The three (3) twenty dollar bills were found in Ivy's pockets, among $836.00.
Jimmy Cole testified that on January 18, 1990, while serving as a confidential informant for the Meridian police department, he purchased three (3) rocks of what appeared to be crack cocaine from Ivy. He also testified that in exchange for his services, the department assisted him in not having to go to court on the earlier traffic violation. In November of 1990, Cole was arrested and charged with violation of probation and attempted burglary and was placed in the Lauderdale County jail.
During the trial, Cole was questioned by the defense over a written statement that he allegedly made to Ivy while both were in jail. The written statement was in direct contradiction with his earlier statement given to Officer Whalen. Mr. Booker, counsel for defense, requested that he be allowed to testify in order to corroborate the second *18 statement, allegedly made by Cole while in jail. The court, after considering the applicable law and circumstances, refused to allow Mr. Booker to testify, stating that the defense should have disclosed Mr. Booker as a potential witness to the State.
Finally, Arthur Lee Ivy testified that he did not sell any drugs to Cole on January 18, 1990, and that the money found on him was money paid to him by a friend he had earlier paid for doing work on his house.

DISCUSSION OF THE LAW

I. DID THE LOWER COURT COMMIT REVERSIBLE ERROR IN REFUSING TO PERMIT THE IMPEACHMENT STATEMENT OF JIMMY COLE TO BE RECEIVED AS EVIDENCE VIA TESTIMONY BY DEFENDANT'S ATTORNEY?

Standard of Review
"The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." Johnston v. State, 567 So.2d 237, 238 (Miss. 1990), citing Hentz v. State, 542 So.2d 914, 917 (Miss. 1989), Monk v. State, 532 So.2d 592, 599 (Miss. 1988). When a trial judge fails to exclude certain testimony, reversal is not warranted absent a showing of prejudice to the accused sufficient to constitute an abuse of the trial judge's discretion. Douglas v. State, 525 So.2d 1312, 1318 (Miss. 1988); Shearer v. State, 423 So.2d 824, 826 (Miss. 1983), citing Page v. State, 295 So.2d 279 (Miss. 1974). The discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence. See M.R.E. 103(a), 104(a).
During the trial, Ivy's attorneys attempted to introduce into evidence a statement alleged to have been written by Jimmy Cole in November of 1990 and while he was in jail with Ivy. The statement alleged to have been written by Cole while in jail read in part: "I have not in the year 1990 bought any cocaine or any other drugs from Arthur Ivy." It was allegedly signed by Cole and was dated November 16, 1990. Mr. Weir acknowledged that this later statement was not disclosed to the State. In order to corroborate and validate this alleged statement made by Cole, Ivy's attorneys requested that the court permit Mr. Booker, one of Ivy's attorneys, to testify to the accuracy and authenticity of the statement. The State objected on the grounds that Mr. Booker as current counsel for Ivy should not be permitted to testify and that he was not disclosed as a potential witness. The State asserted that Rule 4.06(c)(1) requires reciprocal discovery.
The trial court held in part that:
There is no question in my mind that these attorneys either knew or reasonably should have known that their testimony would have been needed at this trial in the event that Mr. Cole denied making that alleged statement. The Court is going to rely on Rule 3.7 of the Rules of Professional Conduct, which deals with lawyers as witnesses. The Court has read it. I suggest that Mr. Weir and Mr. Booker also read it.
* * * * * *
Mr. Weir, you had two different statements that were in direct conflict, did you not?  the original statement that he gave to the State right after the day of the buy and the statement that he gave you.
* * * * * *
Well, I know that you know that this C.I. made that statement Mr. Weir, before this trial started... . Then you have a statement from the C.I. that he said he didn't make the buy. You knew there were two conflicting statements prior to this trial... . All right sir, I am going to reverse my ruling. I am going to base it on Pittman v. Currie. Both of those factors do not exist. I am not going to allow Mr. Booker to testify.
The two factors set forth in Pittman v. Currie, 414 So.2d 423 (Miss. 1982), hold that: 1) a lawyer should not testify unless circumstances arise which are not anticipated and 2) the lawyer's testimony is necessary to prevent a miscarriage of justice. The lower court noted that the second factor was apparent but pointed to the conjunctive (and) *19 which required both factors to be present before allowing current counsel to testify.
This case presents the familiar scenario of a state's witness, who has told more than one story. The informant, who allegedly made a buy, gave a statement to defendant and his lawyers to the effect that he did not buy the drugs in question from the defendant. At trial, he denied making the statement, claiming that the defendant had him sign a blank piece of paper.
The Defendant's attempt to place into evidence, the written statement of Jimmy Cole that was contrary to his courtroom testimony, was met with the State's objection, based on a failure of the Defendant to disclose under the discovery rules. A literal reading of that rule fails to disclose a requirement that a defendant give discovery of statements made by the state's witnesses. Cole was the only witness who could testify that he bought cocaine from Ivy; he was clearly not a witness, who the defendant would call during his case in chief. U.Cr.R.Cir.Ct. 4.06(c)(1).
If this statement is discoverable, it must be viewed as physical evidence "which may be offered in evidence." Because the statement was a writing, it could be considered physical evidence. It would be offered in evidence, however, only if the witness testified differently and then pursuant to the provisions of MRE 613.
Here the physical statement was never allowed into evidence. Moreover, the state, pursuant to its objection and our Box procedure, was given an opportunity to further interview the witness after which it decided to proceed. Box v. State, 437 So.2d 19 (Miss. 1983). Any supposed 4.06 violation is, therefore, moot. Id.; see Cole v. State, 525 So.2d 365, 369 (Miss. 1987).
The question, then, is whether under our rules of evidence and established precedents the Defendant's counsel should have been allowed to testify in rebuttal to the testimony by Cole that what he signed was a blank sheet of paper. We view the rules and hold that they permit such testimony. Rule 613(b), Miss.R.Evid. allows extrinsic evidence of a prior inconsistent statement where the witness has been given the opportunity to explain or deny the same. That is the case here. Nothing in our rules of evidence disqualifies attorneys as witnesses.
In Pittman v. Currie, relied upon by the court below, we recognized just that. This Court noted that "the majority of courts holds that the attorney's testimony is not rendered inadmissible as evidence by rules of ethics... ." Pittman, 414 So.2d at 427. The Court went on to say that the attorney's testimony there allowed by the trial court should not have been admitted because it was cumulative, not because it was otherwise inadmissible. Id.
We did not change this posture in West v. State, 519 So.2d 418 (Miss. 1988). There we found that the trial court erred in requiring that defense attorneys withdraw because they were witnesses to a trial occurrence about which they complained post-trial. More importantly, the West court noted that "[i]n Gradsky v. State, 243 Miss. 379, 137 So.2d 820 (1962) this Court held that in criminal prosecutions the accused may call his attorney as a witness where the attorney has evidence vital to the defense" and that "[t]he court may admonish an attorney when it appears that he knew in advance that he would be called upon to testify in a case, ..., but the court cannot refuse an accused the right to introduce competent evidence in his favor because it may appear that an attorney has violated an ethical rule." Id. at 423 (quoting Gradsky and citing Richardson v. State, 436 So.2d 790 (Miss. 1983) as well as Pittman v. Currie as supportive of this statement.)
In Richardson v. State, decided after the Pittman case, this court faced circumstances practically on all fours with those of the present case. Reaffirming our holding in Gradsky, this Court found reversible error in the failure of the trial court to permit defense counsel to testify to an inconsistent statement given by the chief prosecution witness. Richardson, 436 So.2d. at 792. In a footnote the Court noted that it made no judgment as to whether an ethical violation had occurred. Id. fn. 1.
Clearly, then, Pittman v. Currie is no basis for excluding this testimony. Surely, as the Court noted in Richardson, the accused *20 is entitled to have someone other than himself attest to the fact that the sole witness to the alleged drug transaction, a confessed drug offender, gave a statement absolving the defendant. Richardson, 436 So.2d at 792. The proposed testimony was not cumulative. Nor was it otherwise inadmissible. We therefore reverse the conviction and remand to the circuit court for a new trial.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
NOTES
[1] The jury initially returned with a verdict of guilty; however when polled, only 11 out of the 12 jurors stated that they voted to find defendant guilty. The jury was instructed to return to deliberate.
[2] There was some question and confusion over Ivy's address. The address of 1301 33rd Avenue was written on the search warrant and was an address which Officer J.C. Harris obtained from Ivy during a prior arrest. The search of Ivy's home on 1213 33rd Avenue resulted in the officers recovering the money which Cole had prior to going in to make the purchase.