**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2014-CT-00664-SCT**

*JAMES L. JOHNSON, JR. a/k/a JAMES JOHNSON*
*a/k/a JAMES JOHNSON, JR.*

*v.*

*STATE OF MISSISSIPPI*

**ON WRIT OF CERTIORARI**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/04/2014 |
| TRIAL JUDGE: | HON. JAMES SETH ANDREW POUNDS |
| TRIAL COURT ATTORNEYS: | SADIE GARDNER |
| | GREG MEYER |
| | CLAY S. NAILS |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN R. WHITE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | J. TRENT KELLY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED.  THE JUDGMENT OF THE ALCORN COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED - 12/01/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     In 2012 an Alcorn County jury found James Johnson guilty of aggravated domestic

violence against his ex-wife.  Johnson's appeal was assigned to the Court of Appeals, which

reversed the judgment and remanded the case, finding that the trial court had erred in admitting evidence of prior bad acts without conducting a proper balancing test. We granted the State's petition for writ of certiorari. Finding that the Court of Appeals erred in holding that the trial court did not consider the facts contained in offense reports, we reverse the judgment of the Court of Appeals and reinstate and affirm Johnson's conviction.

## FACTS AND PROCEDURAL HISTORY

¶2.     James Johnson and the victim, Volante Jones, were married for seven years prior to the divorce in November 2012. In December 2012, Johnson called Volante, according to Johnson, to speak with her about her behavior and their children's welfare. Volante asserted that Johnson's call was about what she had done the previous weekend and, since it did not relate to their children, she hung up.

¶3.     Soon after that phone call, Johnson arrived at Volante's home. Volante was cleaning out the freezer when Johnson let himself into the home.  Volante claimed that Johnson came from behind and grabbed her by the hair and by the throat. After some struggling, Volante said she was put into a chokehold and was repeatedly hit in the head as Johnson questioned her, "Where were you? Tell me what his name was." Eventually Johnson ended the assault and released Volante. In Johnson's version of the incident, he claimed that Volante had attacked him, and in reaction to that, he had placed her in a chokehold only to subdue her so he would not be harmed. Volante had scratches on her neck and face. Her eyes were swollen and had ruptured blood vessels, injuries consistent with strangulation.

2

¶4.     Johnson was charged with aggravated domestic violence. He maintained that he had acted in self-defense. In a pretrial motion in limine, the defense sought to withhold any reference to the defendant's prior domestic-violence cases. In response to the motion in limine, the State proffered four offense reports that it would seek to introduce at trial describing prior bad acts of domestic violence.[1]

¶5.     A jury convicted Johnson of aggravated domestic violence and Johnson timely appealed. On appeal, Johnson asserted (1) the evidence of his prior bad acts was not probative of any listed Rule 404(b)[2] exception and, even if it was relevant, it would be too remote to be used as evidence; (2) that the offense reports should have been withheld under Rule 403 since their probative value was outweighed substantially by unfair prejudice; (3) that the trial court erred in not allowing him to make an adequate offer of proof regarding Volante's background; and (4) that the prosecution committed misconduct in its closing argument.

¶6.     The Court of Appeals reversed the judgment and remanded the case after finding that the trial court improperly had admitted into evidence offense reports that contained facts not addressed in the hearing on the motion in limine and that no amendment had been made to the original proffer. We granted the State's petition for writ of certiorari to address the Court of Appeals judgment. We also address the other issues Johnson raised on his initial appeal.

## STANDARD OF REVIEW

---

[1] The subject of the offense reports and when they first were considered by the trial court are pivotal factual findings upon which the Court of Appeals based its reversal.

[2] *See* Miss. R. Evid. 404(b).

3

¶7.     This Court reviews the admission of evidence under the abuse-of-discretion standard. *Smith v. State*, 136 So. 3d 424, 431 (Miss. 2014) (citing *Young v. Guild*, 7 So. 3d 251, 262 (Miss. 2009)). "Evidentiary rulings are affirmed unless they affect a substantial right of the complaining party." *Sewell v. State*, 721 So. 2d 129, 138 (Miss. 1998) (citing *Ivy v. State*, 641 So. 2d 15, 18 (Miss. 1994)).

## DISCUSSION

**I. Whether the Court of Appeals improperly held that the trial court had erred in admitting evidence of prior bad acts.**

¶8.     Prior to trial, the trial court held a hearing on Johnson's motion in limine in which he sought to exclude any references to his prior acts of domestic violence. At this hearing, the State detailed four prior bad acts of domestic violence contained in the respective offense reports. The first offense report in 1999 included a guilty plea and conviction for simple assault between Johnson and his ex-wife Pamela Dilworth after he had gone to her house with a gun and had threatened to kill her. The second offense report included a simple-assault charge between Johnson and an ex-girlfriend in which Johnson had gone to her place of employment and had threatened her. He again pleaded guilty to the simple-assault charge. In the third offense report, he and Volante had a fight in 2002 and again he was charged with simple assault, but the charge eventually was dropped. Volante received a swollen right eye, swollen forehead, and other signs of injuries in this assault. The fourth report detailed the 2012 assault of his daughter in which she was struck on the head, nose, and face. In the fourth offense report, it is noted that the assault charge was retired to the file after Johnson completed an anger-management course.

4

¶9.     The defense argued that the proffered evidence was more prejudicial than probative and none of the Rule 404(b) exceptions applied. The trial court agreed to consider an argument that the prior acts were too remote in time, but the defense failed to provide any authority to support such an argument. After considering the prior acts under the relevant rules of evidence, the trial court denied the motion in limine.

¶10.    At trial, three of the offense reports were admitted into evidence during the direct examination of the prosecution's first witness, with the fourth report being admitted later, during Volante's testimony. Johnson did not make any additional objections to the admission of the offense reports during trial other than those asserted in the hearing on the motion in limine.

¶11.    The Court of Appeals reversed the judgment and remanded after finding that the trial court "abused its discretion by admitting into evidence the entire contents of the four offense reports over the defense's continuing objection." *Johnson v. State*, No. 2014-KA-00664-COA, 2015 WL 8718021, at *10 (Miss. Ct. App. Dec. 15, 2015). The Court of Appeals also found that, during the State's verbal proffer, at the hearing on the motion in limine, it did not provide copies of the offense reports to the circuit court, nor did it say it intended to offer the entire reports into evidence. *Id.* at *9. Further, the Court of Appeals held that the trial court had erred when it failed to consider the additional facts contained in the offense reports, which were not proffered verbally at the hearing on the motion in limine. *Id.* These additional facts included: kicking in a back door during the incident with Johnson's first wife, Pamela;

threatening to burn down Pamela's home; and allegations from Johnson's former girlfriend that she feared Johnson would harm her baby. *Id.*

¶12. The State insists the Court of Appeals misapprehended the record and that the trial court reviewed the contents of the reports before determining their admissibility. Even though the transcript of the pretrial hearing does not show that the trial court examined the reports, the trial court later made clear that it had done so. At trial, following the testimony of the State's first witness, the trial judge asked the jury to leave the courtroom. The trial judge then addressed the admissibility of Johnson's prior bad acts, specifically the charge of assault of his daughter contained in the fourth offense report. The trial judge stated:

> [I]n my review of the exhibits (offense reports) that were going to be introduced by the State *prior to my ruling* in the case, I discovered and had been made aware . . . when *I was going over the facts of each of those cases* I was aware that the . . . charge [in the fourth offense report, Exhibit S-4] was dropped because he was ordered to go to anger management.

(Emphasis added.) The trial judge also stated that he "wanted to make aware [sic] that he did go over those records in making his determination of what was more probative and what was more prejudicial . . . ." The trial judge then made clear on the record that he had failed to include in his previous ruling[3] that he found the anger-management-course certificate in exhibit S-4 to be more prejudicial than probative and that it should be removed from the exhibit prior to being admitted as evidence. He then asked both parties if this was correct, and both stated for the record that it was. Defense counsel agreed with the trial judge's ruling

---

[3] It is unclear whether the trial judge is referring to the ruling he made at the hearing on the motion in limine or in the later meeting in chambers. Both happened before the offense reports were admitted.

that the certificate was more prejudicial than probative and that it should be removed from the exhibit prior to being admitted. After this colloquy, Johnson offered no further objections to Exhibit S-4.

¶13.    Though, in its proffer, the State did not mention each act associated with each offense report, it did provide the bulk of the facts. Additionally, since the record reflects that the offense reports were before the trial court at the hearing on the motion in limine, then all facts contained in the offense reports were before the trial court. The record also shows that the trial court considered these facts before finding the offense reports to be admissible. Therefore, we find that the Court of Appeals erred in reversing the trial court's judgment on this basis.  Since the Court of Appeals reversed on the single issue discussed above, we now address the other issues raised on appeal.

**II. Whether the trial court erred in admitting evidence of defendant's prior bad acts.**

¶14.    Johnson argues that the evidence of prior bad acts did not meet any of the exceptions contemplated in Rule 404(b) of the Mississippi Rules of Evidence. Rule 404 generally prohibits the admission of evidence of a person's character for the purpose of proving that he or she acted in conformity with that character on a particular occasion. Miss. R. Evid. 404(a). Evidence of "other crimes, wrongs or acts" is inadmissible as character evidence, but it may be admitted for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Miss. R. Evid. 404(b). The purposes listed in Rule 404(b) are not exhaustive; they simply are examples of

noncharacter purposes for which evidence of other crimes, wrongs, or acts may be admitted. *Green v. State*, 89 So. 3d 543, 549 n.12 (Miss. 2012).

¶15.    When determining whether to admit evidence of other crimes, wrongs, or acts, this Court utilizes a two-part analysis: the evidence offered (1) must "not [be] admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" (Miss. R. Evid. 404(b)(1)), and (2) " . . . its probative value is [not] substantially outweighed by a danger of . . . unfair prejudice . . . ." (Miss. R. Evid. 403). *See also Brooks v. State*, 903 So. 2d 691, 699 (Miss. 2005) (quoting *Crawford v. State*, 754 So. 2d 1211, 1220 (Miss. 2000)).  However, the trial court is not required to apply Rule 404(b) to every underlying fact for each offense report. In *Green v. State*, the Court stated that its "caselaw reflects that the trial court's failure to identify the specific applicable exception(s) under Rule 404(b) does not require reversal." *Green v. State*, 89 So. 3d 543, 551 (Miss. 2012).

¶16.    In another case involving the admissibility of prior bad acts, the State sought to introduce evidence of prior sexual misconduct and argued that "the [evidence of prior bad acts] . . . was admissible to show a common plan or scheme by [the defendant]." *Boggs v. State*, 188 So. 3d 515, 521 (Miss. 2016). Boggs was charged with gratification of lust with a minor, the facts of which were significantly similar to the evidence of the previous incidents of abuse the State sought to enter. *Id.* Both instances dealt with children who were related to Boggs and who were about the same age when the abuse occurred. *Id.* As a result the Court reasoned that the testimony of the victims established a common plan or scheme.

8

*Id.* While the State essentially argued that all of the Rule 404(b) exceptions applied, the Court noted that "where the State offers a relevant noncharacter purpose for admitting evidence, 'the fact that other alternative purposes are argued is irrelevant . . . .'" *Id.* (quoting *Cole v. State*, 126 So. 3d 880, 885-86 (Miss. 2013)) (holding that, as long as the evidence of prior acts was not used to show propensity to commit a particular crime, it was admissible); *see also Green v. State*, 89 So. 3d 543 (Miss. 2012) (the fact that the evidence was offered for noncharacter purposes but bore some reflection on the defendant's character did not bar its admissibility under Rule 404(b)); *Gore v. State*, 37 So. 3d 1178 (Miss. 2010) (the court found no abuse of discretion in admitting evidence of prior bad acts under the Rule 404(b) exceptions where the evidence presented facts that were substantially similar to the case at hand); and *Derouen v. State*, 994 So. 2d 748 (Miss. 2008) (the court overruled the per se exclusion of evidence of a prior sexual offense other than the one charged and allowed prior-acts evidence to be admitted under Rule 404(b) if balanced under Rule 403).

¶17.    Similar to *Boggs*, the trial court in the instant case noted that Johnson's prior acts showed "intent, motive, and plan" because the prior assaults all were against women, where he was the aggressor and he had initiated the contact. We also note that he had a prior relationship with all of the women. At the conclusion of the arguments on the motion in limine to admit the Rule 404(b) evidence, the trial court stated:

> [I]n light of the arguments here today, the Court finds that, one, that the State is seeking to prove intent, motive, plan, and that [the domestic violence] was not in self-defense. . . . For those reasons the Court finds that under 404 that the State does bring forward a proper argument to do that. . . . The balancing test under 403 . . . [shows] that the probative value does outweigh

9

> the prejudicial effect. . . . Absence [sic] a time issue, then I am going to rule under 404 that they are admissible in this particular case.

Therefore, we find that the trial court did not abuse its discretion when it admitted the offense reports under Rule 404(b).

¶18. Johnson also contends that, even if the prior bad acts were admissible under Rule 404(b), their probative value was outweighed by their prejudicial effect under Rule 403. Mississippi Rule of Evidence 403 "gives the trial court the discretion to prevent the admission of otherwise relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Boggs*, 188 So. 3d at 522 (quoting Miss. R. Evid. 403). In *Boggs*, the Court found that the trial court had balanced the probative value of the evidence and found that it "was not substantially outweighed by the danger of unfair prejudice" and as a result affirmed the trial court's judgment. *Id*.

¶19. We find that the trial court in this case also applied Rule 403 correctly to the prior-acts evidence.[4] The trial court found that all four prior offenses were very serious and akin to what happened in this case and therefore probative for the jury as it decides the facts of the case. The trial judge stated that under "[t]he balance test [of] 403 . . . [he] [found] that the

---

[4] While the trial judge applied Mississippi Rule of Evidence 403 correctly, the trial judge failed to state the rule correctly. Rule 403 states that the "court may exclude relevant evidence if its probative value is *substantially* outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." (Emphasis added.)

10

probative value [did] outweigh the prejudicial effect." We find that the trial court properly admitted the evidence.

### III. Whether the trial court erred in not allowing Johnson to make an adequate offer of proof.

¶20. This issue arises out of Johnson's attempt to elicit testimony from the victim, Volante, that allegedly would call into question her credibility as a witness. During cross-examination, Johnson questioned Volante regarding her line of work, to which she responded that she was a fitness and dance instructor. Following a question regarding what she had "done in the past for a living," the State objected to Johnson's line of questioning, stating that it was "irrelevant." The trial court sustained the prosecution's objection to the line of questioning since the testimony appeared to be irrelevant.

¶21. Later, once the jury was out of the room, the trial court allowed the defense to make a verbal proffer into the record. The defense stated that it had wished to elicit testimony from Volante to attempt to establish that she had worked as an exotic dancer and escort at some unidentified time in her past. The defense alleged that this was relevant to her credibility as a witness. The trial court denied Johnson's request to bring Volante into the courtroom for the proffer and again stated that the objection to this line of questioning was sustained.

¶22. On appeal, Johnson claims that he was not allowed to make a sufficient proffer of Volante's testimony. While an accused criminal has a fundamental right to confront witnesses testifying against him, "the rule does not allow cross-examination on any matter affecting the credibility of witnesses *without restraint.*" ***Bishop v. State***, 755 So. 2d 1269, 1272 (Miss. Ct. App. Feb. 8, 2000) (emphasis added) (citing ***White v. State***, 532 So. 2d

11

1207, 1217 (Miss. 1988)). To attack the credibility of a witness, the testimony must be "about the witness's reputation for having a character for truthfulness or untruthfulness." Miss. R. Evid. 608(a). In the present case, the defense sought to elicit testimony regarding Volante's alleged past employment. Despite the nature of that alleged employment, if shown to be true, the testimony would not have had an arguable impact on her credibility.

¶23.    Additionally, though the defense is given "wide latitude in cross examination," the defense still is limited by considerations of relevance and prejudice. *See* **Hughey v. State**, 729 So. 2d 828, 831 (Miss. Ct. App. Dec. 30, 1998) (citing **Horne v. State**, 487 So. 2d 213 (Miss. 1986)). Relevant testimony must have a tendency to make a fact that is of consequence to the determination of the action more probable or less probable than it would have been without the [testimony].  Miss. R. Evid. 401. Volante's career choices would not have made any fact of consequence more or less probable and therefore were not relevant in this case. Since the defense's line of questioning would not have affected Volante's credibility as a witness, clearly was not relevant in this case, and was not supported by any evidence, including an alleged time frame, the trial court's decision to sustain the objection to defense's line of questioning was not an abuse of its discretion.

### IV.  Whether the prosecutor's description of the defendant was improper and requires reversal.

¶24.    During its closing argument, the State referred to Johnson as "a six foot black man" when describing the facts of the case.  Johnson contends, for the first time on appeal, that this characterization created prejudice and improperly affected the jury's decision.  When there is alleged prosecutorial misconduct, "[t]he applicable rule here is clear . . . [i]n order to

12

preserve an issue for appeal, counsel must object . . . [and] [t]he failure to object acts as a waiver." ***Havard v. State***, 928 So. 2d 771, 791 (Miss. 2006) (quoting ***Carr v. State***, 873 So. 2d 991, 1004 (Miss. 2004)). The defense in the present case failed to object to the prosecutor's statement, so this issue is procedurally barred. ***Id.*** And no plain error is alleged that would invalidate the procedural bar. ***Grayer v. State***, 120 So. 3d 964, 968-69 (Miss. 2013).

<u>CONCLUSION</u>

¶25. We reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the Alcorn County Circuit Court.

¶26. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. CONVICTION OF AGGRAVATED DOMESTIC VIOLENCE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN (10) YEARS SUSPENDED, IS REINSTATED AND AFFIRMED. APPELLANT SHALL BE PLACED ON FIVE (5) YEARS POST-RELEASE SUPERVISION, WITH CONDITIONS. APPELLANT SHALL PAY COURT COSTS IN THE AMOUNT OF $431.50, A FINE IN THE AMOUNT OF $4,000, $200 TO THE DISTRICT ATTORNEY'S INVESTIGATIVE FUND, $200 TO THE CORINTH POLICE DEPARTMENT INVESTIGATIVE FUND, AND $100 TO THE MISSISSIPPI CRIME VICTIMS' COMPENSATION FUND. APPELLANT SHALL ENTER A PAYMENT PLAN WITHIN THIRTY (30) DAYS FOLLOWING RELEASE FROM CUSTODY.**

**RANDOLPH, P.J., LAMAR, COLEMAN AND BEAM, JJ., CONCUR. DICKINSON, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, JJ.; COLEMAN, J., JOINS IN PART. MAXWELL, J., NOT PARTICIPATING.**

**DICKINSON, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶27. While I join the result the majority reaches, I am writing separately to address two issues: Johnson's prior bad acts and an inappropriate statement the prosecutor made during closing argument.

*Proper Use of Rule 404(b)*

¶28. During a pretrial hearing, the trial judge allowed the prosecutor to discuss incident reports concerning prior offenses allegedly committed by the defendant, without having the incident reports marked for identification. The incident reports, which later were introduced into evidence, included discussions of prior bad acts other than the ones discussed during the hearing.

¶29. I am satisfied that the record supports the conclusion that the trial judge considered those other prior bad acts when he performed the required balancing test under Mississippi Rule of Evidence 403. But had the trial judge required the State to have each proposed exhibit marked for identification before discussing them during the pretrial hearing, the confusion about that fact would have been avoided because the judge's remarks would have referenced the exhibit numbers.

¶30. In applying the Rule 403 balancing test, the trial court stated "the probative value [did] outweigh the prejudicial effect." This was not a correct statement or application of the test. Rule 403 does not require the probative value of evidence to "outweigh" the "prejudicial effect." Instead, Rule 403 requires the trial judge to conduct a balancing test to determine whether the danger of unfair prejudice *substantially* outweighs the probative value.

¶31. Rather than point out the trial court's error for the benefit of the bench and bar, the majority says "the trial court in this case also applied Rule 403 correctly to the prior-acts evidence," and in a footnote, says: "[w]hile the trial judge applied Mississippi Rule of Evidence 403 correctly, the trial judge failed to state the rule correctly." Following this statement, the majority then recites the correct test as stated in Rule 403, which—according to the trial judge's own statement—certainly is not the test he applied. The majority fails to inform us of how a trial judge could state a rule incorrectly but then apply it correctly. One logically assumes the trial judge applied the rule as he stated it.

¶32. The majority's misstatements of the correct application of the Rule 403 balancing test are a concern to me because they imply that, for evidence to be admissible, Rule 403 requires the evidence's probative value to outweigh the dangers listed under Rule 403, including unfair prejudice. But Rule 403 does not require the probative value of evidence to "outweigh" the "prejudicial effect." The rule requires only that one of the dangers stated in the rule not *substantially* outweigh the evidence's probative value.

¶33. While pointing out the trial judge's error might at first appear picayunish—after all, the trial judge's misstatement of the test was harmless here—I point it out only because the mistake so often is made in our trial courts, and it is improperly characterized by today's majority as a "correct" application of Rule 403. It was not a "correct" application of the rule. The majority's casual and imprecise analysis of the application of Rule 403 is an example of how this Court, through its opinions, can cause our precedent to drift away from the

15

requirements of our own rules to the point that practicing lawyers and judges are left to guess the rule of evidence du jour.

¶34.    In *Newell v. State*,[5] this Court claimed for itself the exclusive power and authority to promulgate the rules of evidence for our trial courts.  That being the case, surely it is our responsibility to carefully recite and apply the rules we write—as they are written.

¶35.    Also at the pretrial hearing, the prosecutor stated that Johnson's prior bad acts were admissible for four reasons:  to prove intent, motive and plan, and that Johnson did not act in self-defense.  After a review of the record, it is clear that these prior bad acts indeed were admissible to rebut Johnson's assertion that he acted in self-defense.  So, I agree "the trial court did not abuse its discretion when it admitted the offense reports under Rule 404(b)."[6]

¶36.    It certainly is noteworthy that the prosecutor never explained how Johnson's prior bad acts were relevant to prove motive or plan as the trial judge stated.  But, because overruling a Rule 404 objection requires only that the prosecutor show some purpose other than propensity—a requirement the prosecutor certainly met here—the trial judge's statements about uses beyond rebutting the defendant's claim of self-defense were immaterial.

*Prosecutor's Inappropriate Statement to the Jury*

¶37.    Additionally, Johnson argues his conviction should be reversed because the prosecutor made the following statement to the jury during closing argument:

---

[5] *Newell v. State*, 308 So. 2d 71, 78 (Miss. 1975).

[6] Maj. Op. at ¶17.

16

I've already touched on the self-defense, I don't think that requires anything else. Ladies and Gentlemen, you're to use your common sense. A six-foot black man, a five-foot ex-wife; he wasn't scared of her.

¶38. The majority summarily dispatches this issue by pointing out that, because Johnson's counsel failed to object at trial, the issue may not be reviewed on appeal. While the majority's observations are correct, more needs to be said.

¶39. There are several possible reasons—none of them good—why the prosecutor felt that, in the context of Johnson's self-defense claim, it was necessary to point out to the jury that Johnson was a "black man." Her implication may have been that black men are not as likely to act in self-defense as other races. Or perhaps she intended the jury to assume that black men are more likely to engage in violence toward women, or that black men are not as worthy of the jury's careful consideration of a self-defense claim. The State offers no explanation for the prosecutor's reference to Johnson's race, and I can think of no legitimate reason his race should have been a factor in the jury's consideration of his self-defense claim.

¶40. Whatever the prosecutor's reason, the statement was inappropriate and should not have been made.[7] But because Johnson did not object to the statement in the trial court, we will not reverse absent a finding of plain error,[8] which requires that we conclude the error resulted in "a manifest miscarriage of justice or seriously affect[ed] the fairness, integrity,

---

[7] *See*, *e.g.,* *GMAC v. Baymon*, 732 So. 2d 262, 272 (Miss. 1999) (trial court erred in allowing counsel to use "irrelevant, prejudicial and inflammatory statements" before the jury); *see also* *Reed v. State*, 232 Miss. 432, 99 So. 2d 455 (1958); *Harris v. State*, 209 Miss. 141, 46 So. 2d 91 (1950).

[8] *Roby v. State*, 183 So. 3d 857, 871 (Miss. 2016) (quoting *Kirk v. State*, 160 So. 3d 685. 692 (Miss. 2015)).

or public reputation of judicial proceedings"—a conclusion that, based on the record before us, I am not prepared to reach. That said, while I do not believe the error rises to the level of plain error, it does comes close.

**KITCHENS AND KING, JJ., JOIN THIS OPINION. COLEMAN, J., JOINS THIS OPINION IN PART**.