# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00588-COA

**TYLER CULBERSON**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                **APPELLEE**

DATE OF JUDGMENT:              05/03/2023
TRIAL JUDGE:                  HON. M. BRADLEY MILLS
COURT FROM WHICH APPEALED:    MADISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                              BY: HUNTER NOLAN AIKENS
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY: DANIELLE LOVE BURKS
DISTRICT ATTORNEY:            JOHN K. BRAMLETT JR.
NATURE OF THE CASE:           CRIMINAL - FELONY
DISPOSITION:                  AFFIRMED - 01/23/2025
MOTION FOR REHEARING FILED:

**EN BANC.**

**McCARTY, J., FOR THE COURT:**

¶1. A jury convicted Tyler Culberson of two counts of aggravated domestic violence as a violent habitual offender. The first count was for strangling or attempting to strangle his girlfriend, Taylor Rigby, and the second count was for causing or attempting to cause bodily injury to her with a deadly weapon, specifically, driving his car into hers. The trial court sentenced Culberson to serve two consecutive terms of life imprisonment without eligibility for parole in the custody of the Mississippi Department of Corrections.

¶2. Culberson appeals, raising four issues. He argues the trial court erred in refusing to instruct the jury on the lesser-included offense of simple domestic violence for each count.

Further, Culberson claims that he received ineffective assistance of counsel because his trial counsel failed to submit a jury instruction on Count II for simple domestic violence for negligently causing bodily injury with a deadly weapon. Additionally, he argues the trial court improperly allowed the State to present evidence of his prior bad acts of domestic violence. Finally, Culberson contends the trial court erred in sentencing him as a violent habitual offender.[1]

¶3. Finding no error, we affirm Culberson's convictions and sentences as to both Count I and Count II.

**STATEMENT OF FACTS**

¶4. Culberson and Taylor began dating in May 2022. Taylor testified that a couple of weeks into their relationship, Culberson became violent toward her for the first time and "almost killed [her]." Taylor testified that as a result, on May 14, 2022, Culberson picked her up from work and took her to a wooded area south of Jackson, Mississippi, and beat her. Culberson made Taylor put on "bondage handcuffs" with her hands behind her back and pulled her out of his car by her feet. Culberson continued to kick and punch Taylor for thirty minutes. Taylor testified that Culberson also "choked [her] out" by squeezing her neck with his hands and restricting her airflow until she passed out. They spent the night in a hotel because Taylor could not go home to her mother with her injuries. The next morning, they

---

[1] Culberson's indictment had an exhibit that cited two prior felony convictions. The first conviction was in 2012 for motor vehicle theft in Madison County, where he was sentenced to ten years in custody, and the second conviction was in 2017 for aggravated domestic violence in Rankin County, where he was sentenced to twenty years and served approximately four years in custody. He was released on parole at the end of January 2022.

went to the house of Culberson's grandmother to further conceal her injuries. Taylor did not report this incident to the police and continued to see Culberson. Taylor testified that their relationship "would get better and then get worse and then get bad again."

¶5.     One night in the fall of 2022, Culberson and his roommate went to a Halloween party at Shucker's Oyster Bar in Ridgeland. Taylor did not go to the party but stayed at the house of Culberson's roommate in Madison. Culberson was living with his friend because Culberson and Taylor had broken up the week before but were back together again. When Culberson returned from the party, he became enraged because he saw on Taylor's phone that she had been speaking with another man the previous week when they were broken up. Taylor testified that in response, Culberson backhanded and punched her. He continued to beat her in his bedroom until around 4:00 in the morning.

¶6.     Taylor testified that Culberson bit her forehead, bit both her right and left forearms, broke her arm, and choked her. When Culberson bit her forehead, Taylor explained that he had one hand around her neck and the other hand on her forehead while he held her down on his bed. Her airflow was restricted to the point where she was having trouble breathing. Taylor testified that Culberson quit beating her around 4:00 a.m. because he had to get some sleep before work that day. When they awoke at 9:00 a.m., Culberson resumed beating Taylor. He took her phone, and for two hours, Culberson would not let Taylor leave the bedroom. Culberson then told Taylor that he was not going to work and planned to "take her to the woods again." Taylor testified, recalling the incident in May, that she was scared for her life.

¶7. To escape, when Culberson went to the bathroom, Taylor grabbed her purse, ran outside, and jumped in her car. Taylor did not have her phone, so she could not call the police. As she was backing up, Culberson ran out of the house and banged on her window. Taylor drove off, "trying to get somewhere with some people." Culberson followed her in his car. Taylor was driving approximately seventy-five to eighty miles per hour on North Old Canton Road with Culberson "coming up behind [her] at a very high rate of speed."

¶8. Taylor testified that Culberson came up beside her car, "looked directly at [her]," and "rammed" her car with his car. From the impact, Taylor's car went airborne, hit a power pole and two trees, and spun around. All of Taylor's airbags deployed except for the steering-wheel airbags. After the crash, Culberson ran up to her car's window and tried to get Taylor to leave the scene with him, but he could not open her door because it was damaged.

¶9. Valarie Zimmerman testified that she and her husband witnessed the wreck while driving on North Old Canton Road. Valarie saw Taylor's gray car was coming toward her in the proper lane. Then, she saw a white car quickly come beside the gray car as though trying to pass. Valarie testified that the white car "bumped" the gray car on the driver's side, resulting in the gray car going off the road airborne, hitting a utility pole and spinning around before landing on four tires. Valarie pulled over and ran to the gray car, where she heard a man screaming at the person in the gray car. Because the airbags had deployed, Valarie could not see inside the car, so she lifted one of the airbags to see the man hitting a young woman. Valarie heard him screaming, "What the f*** are you doing?" Valarie saw

4

the woman "crouched up on the other side of the door."

¶10. Valarie told Culberson to "get the f*** out of there" and said she was calling the police. In response, Culberson ran to his car and bent up his license plate so that Valarie could not see the numbers. Valarie went over to his car, unbent the plate, and yelled out the numbers to her husband before Culberson sped off. The Zimmermans then called 911.

¶11. Valarie testified that Culberson had on jeans, but no shirt or shoes. She also observed Taylor's injuries—she was bleeding from her mouth, complained of her arm hurting, and "had bite marks all over her," as well as cut marks. The Zimmermans helped Taylor get out of the destroyed car and waited for law enforcement to arrive.

¶12. Officer Molly Ratcliff of the Madison Police Department responded to the scene of the wreck. She was aware the wreck was related to a domestic altercation at a house in Madison County. At the scene, Officer Ratcliff observed Taylor's car near a tree. Her car had broken a utility pole at its base, and the pole was hanging from the power lines. Officer Ratliff observed the following injuries on Taylor: a bite mark on her forehead; a bruised and swollen eye; a bloody nose; and bruising on her top lip, behind her ear, and on the back of her neck. Further, Taylor was holding her right arm and complaining of pain. Taylor was taken by ambulance to a local emergency department for her injuries.

¶13. Dr. Jonathon Patch treated Taylor at the emergency department. He testified at trial as an expert in the field of emergency medicine. Dr. Patch relayed that Taylor's chief complaint was being assaulted that morning by her ex-boyfriend. She reported being knocked to the ground, bit, punched in the face, kicked in the right forearm, and later run

5

off the road. Taylor did not report to Dr. Patch that she had been strangled or choked and denied having any neck pain. Dr. Patch observed that Taylor had multiple bruises and lacerations on her face and upper extremities, as well as bite marks on her face and arms. Dr. Patch's medical records, which were admitted into evidence, indicated Taylor had contusions, abrasions, and a hematoma to her right eye with bruising or bleeding under the white part of the eye. Additionally, Taylor's forearm had been broken in what is called a "nightstick fracture." Dr. Patch explained that this type of fracture is usually the result of being struck by something and would not be the result of an automobile accident.

¶14. Dr. Patch testified that while it would be difficult to determine whether Taylor's facial injuries came from the assault or the wreck, Taylor's bite marks and arm fracture were not from the wreck. He told the jury that the photographs taken by police showed contusions on the back of Taylor's neck and behind her ear that were not visible at the emergency room. Even though Dr. Patch did not observe any bruising, contusions, or swelling to the neck area, he testified that bruising from being choked or strangled could appear anytime between a day and a day-and-a-half later. He testified that based on the evidence he saw in the emergency room, it was "still possible that she could have been strangled."

¶15. Investigator Matthew Ezell of the Madison Police Department was assigned to the case. He testified that hours after the wreck, Culberson's roommate's house was searched, and marijuana paraphernalia and methamphetamine were found. Investigator Ezell noted that Culberson's license plate number had been entered into a law enforcement license-plate

6

reader system. A "be on the lookout" (BOLO) alert was issued for Culberson and his car. Later that evening, law enforcement located Culberson at a gas station in Richland.

¶16. The chief of the Richland Police Department testified that when he approached the suspect, Culberson gave him a false name. When another officer tried to handcuff Culberson, he fled on foot, and a brief manhunt ensued. Culberson was apprehended and arrested a short time later. The State introduced video footage from the chief's body camera showing these events.

¶17. On November 2, 2022, Taylor went to the police station where her injuries were photographed, particularly the bruising to her neck, behind her ear, and near her eyes. Officer Ratcliff testified these areas were of importance because Taylor had told the officer at the scene that Culberson choked her during the altercation, and these areas were most likely to show choking-related injuries. The photographs of Taylor's injuries were entered into evidence and shown to the jury at trial.

¶18. Rebecca Neely, Culberson's former girlfriend, testified for the State. Neely was the victim of Culberson's 2017 conviction for aggravated domestic violence. She and Culberson dated for about three weeks before breaking up around July 4, 2016, when he, as she testified, "tried to kill [her]." Culberson became violent when Neely received a text message from her manager at work, but Culberson did not believe it was her manager. So he grabbed her phone, threw it, and "grabbed [Neely's] head and slammed it into his knee." Neely described the night as "nine hours of basically torture," when he choked, stabbed, hit, and bit her. At one point, Culberson started to tie Neely's hands up with rope to prevent her

7

from escaping while he got some sleep, but then he "snapped out of it" and stopped. He and Neely then drove to a Walmart in Byram, after which Culberson planned to take Neely to his grandmother's house to hide her injuries. But when Culberson went inside the Walmart, he left Neely in the car, and she asked some women nearby to call the police. The police arrived, and Neely was treated for her injuries and received stitches.

¶19. Culberson testified in his own defense at trial. He explained that he had known Taylor since high school and had not seen her for years when they began communicating on social media. Culberson described their relationship as "highly sexual," with fights and disagreements. He claimed the only time they "really got physical" was in the bedroom and that it was consensual.

¶20. Regarding the May 2022 incident in the woods, Culberson testified that they were riding around drinking after Taylor got in trouble at work. He claimed the pair decided to have "role play sex," so Culberson drove to some woods in South Jackson. He denied punching or beating Taylor but said he used handcuffs on her while having sex. Culberson testified that he and Taylor broke up in August 2022 after Taylor made false domestic-violence accusations against him, but they later reunited.

¶21. Culberson admitted that on the night of October 30, 2022, he and Taylor were arguing and had a physical altercation. He also admitted to asking her if she had been communicating with any men from her past. Culberson claimed that he had decided to break up with Taylor that night and that this time, it was "final." He alleged Taylor became upset about the breakup and tried to leave the house at 3:00 a.m., but Culberson took Taylor's car

8

keys because he believed she was too intoxicated to drive.

¶22. Culberson also offered testimony about the physical injuries he inflicted on Taylor that evening. When Taylor reached around him trying to get her car keys out of his back pocket, Culberson claimed he bit her forehead and told her, to "Quit b***h. Stop. You're not leaving." Taylor then pushed her hand into his face, and Culberson bit her arm. Taylor pushed her other hand into his face, and Culberson bit that arm. He admitted to biting Taylor no fewer than three times. According to Culberson, "things calmed down" eventually, and they fell asleep. He denied ever choking or strangling Taylor.

¶23. Culberson also gave testimony as to his version of the car chase and wreck. He testified that in the morning, when he was preparing to go to work, Taylor was upset they were breaking up. According to Culberson, Taylor then got her keys and left in her car, "floor[ing] it." Culberson decided to pursue her in his car because he was concerned that she really was going to hurt herself. He told the jury he was trying to get Taylor to stop her car by cutting her off.

¶24. Culberson testified that Dr. Patch, Valarie Zimmerman, Office Ratcliff, and Taylor were all lying. He attributed Taylor's broken arm and contusions to the car wreck, and he denied punching her, bruising her eye, or bruising behind her ear. Culberson attributed the bruises on the back of Taylor's neck to him pulling her hair before the fight. He denied trying to run Taylor off the road. Culberson explained that he ran from the Richland police because he was "stoned," knew he was about to go to jail, and was "freaking out."

¶25. After two days of trial, the jury returned a unanimous verdict of guilty on both counts

9

of aggravated domestic assault. As a violent habitual offender, the trial court sentenced Culberson to life imprisonment without eligibility for parole for each charge, which were "ordered to run consecutively with each other[.]" Furthermore, for "disorderly, contemptuous, and insolent" behavior—which the trial court found was "directly intended to interrupt the proceedings of the court and to impair the respect due" to it—the trial court held Culberson in contempt on three counts.

¶26. Aggrieved, Culberson appeals, raising four errors. First, he argues he should have received a lesser-included instruction on simple assault (i.e., simple domestic violence) for each of the two counts of aggravated domestic assault. Second, he argues his trial counsel was ineffective in failing to seek a jury instruction on Count II of his indictment. Third, he argues the trial court abused its discretion in allowing in evidence of Culberson's prior violence against other domestic partners. Last, he argues he should not have been sentenced as a habitual offender.

¶27. Finding no error, we affirm.

## ANALYSIS

### I. Jury Instructions on Lesser-included Offense of Simple Domestic Violence for Counts I and II

¶28. Culberson argues that the trial court erred by refusing to give his jury instructions for both counts in the indictment on the lesser-included offense of simple domestic violence, a misdemeanor.[2] He claims a reasonable jury could have found him not guilty of aggravated

---

[2] "A person is guilty of the felony of simple domestic violence third who commits simple domestic violence" and has two prior convictions within seven years for any combination of simple or aggravated domestic violence. Miss. Code Ann. § 97-3-7(3)(b)

10

domestic violence but guilty of the lesser-included offense.  Therefore, he submits that his convictions should be reversed, and the case remanded for a new trial.

¶29.   "When a party claims that he is entitled to a lesser-included-offense instruction, the standard of review is de novo, as it is a question of law." *Buchanan v. State*, 84 So. 3d 812, 815 (¶8) (Miss. Ct. App. 2011) (citing *Downs v. State*, 962 So. 2d 1255, 1258 (¶10) (Miss. 2007)).  "Failure to give such an instruction when warranted is reversible error." *Id.*

¶30.   The statute for aggravated domestic violence provides:

> When the offense is committed against . . . a person who has a current or former dating relationship with the defendant, . . . a person is guilty of aggravated domestic violence who:
>
> > (i) Attempts to cause serious bodily injury to another, or causes such an injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
> >
> > (ii) Attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or
> >
> > (iii) Strangles, or attempts to strangle another.

Miss. Code Ann. § 97-3-7(4)(a).  We shall discuss each count in turn.

¶31.   Simple domestic violence is defined in pertinent part as follows:

> When the offense is committed against . . . a person who has a current or former dating relationship with the defendant, . . . a person is guilty of simple domestic violence who:
>
> > (i) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another;

---

(Rev. 2020).

11

(ii) Negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or

(iii) Attempts by physical menace to put another in fear of imminent serious bodily harm.

Miss. Code Ann. § 97-3-7(3)(a).

### A.    Count I - Strangulation

¶32.    Culberson argues the trial court should have given an instruction on simple domestic violence, which he alleges was a lesser-included offense to the strangulation charge.

¶33.    The question is whether simple domestic violence under section 97-3-7(3)(a)(i) is a lesser-included offense of aggravated domestic violence by strangulation under section 97-3-7(4)(a)(iii). We conclude that under the unique facts presented by the testimony in this case, the lesser instruction was not warranted.

¶34.    Our precedent is clear that "[a] defendant has an 'absolute right' to a jury instruction for a *lesser-included* offense if the evidence supports such an instruction." *Brown*, 285 So. 3d at 676 (¶12) (emphasis added). "[A] lesser-included offense is one in which all the essential ingredients are contained in the offense for which the accused is indicted[.]" *Eubanks v. State*, 341 So. 3d 896, 913 (¶62) (Miss. 2022) (quoting *Downs v. State*, 962 So. 2d 1255,1261 (¶23) (Miss. 2007)).

¶35.    Conversely, "an offense whose essential elements are *not included* . . . [in] the offense(s) charged in the indictment" is "a lesser-nonincluded-offense." *Hye v. State*, 162 So. 3d 750, 753 (¶6) (Miss. 2015) (emphasis added). The *Hye* Court expressly overruled longstanding precedent regarding jury instructions, concluding "that a criminal defendant

no longer has the unilateral right under Mississippi law to insist upon an instruction for lesser-*related* offenses which are *not necessarily included* in the charged offense(s), i.e., so-called lesser-nonincluded-offense instructions." *Id*. at 751 (¶2) (emphasis added).

¶36. So before turning to whether Culberson was entitled to a lesser-included jury instruction, we must first determine which law the State charged him with violating. The one at issue here—Count I of Culberson's indictment—states he "did unlawfully, willfully, and feloniously strangle or attempt to strangle" the victim "in violation of Miss. Code Ann. § 97-3-7(4)(a)(iii)." The law is short and simple, determining that "a person is guilty of aggravated domestic violence who . . . [s]trangles, or attempts to strangle another." And while other subsections of the law criminalize attacking another to cause serious bodily harm or attacking with a deadly weapon, Culberson was not charged with violating those subsections.

¶37. Therefore, the only evidence from his trial that would warrant giving a lesser-included instruction for simple domestic violence would be evidence of *injuries relating to strangulation*. In the same statute, our Legislature defined "strangle" as "restrict[ing] the flow of oxygen or blood by intentionally applying pressure on the neck, throat or chest of another person by any means or to intentionally block the nose or mouth of another person by any means." Miss. Code Ann. § 97-3-7(9)(a).

¶38. We have previously upheld the denial of a simple domestic violence instruction in a conviction for aggravated domestic violence when there was testimony that the defendant "initiated the altercation by grabbing [the victim] from behind and putting his arm around

13

her neck," which she "testified . . . limited her breathing." *Brown*, 285 So. 3d at 677 (¶18). While the defendant had requested an instruction for simple domestic violence, we found no basis for it since "Brown only offered evidence that he did not do anything." *Id*. As the trial court phrased it in refusing the instruction, "'The defendant's testimony is that he never touched her.'" *Id.* Accordingly, the instruction was properly refused, as there was no basis for it in the record, and it was not a correct statement of law. *Id.*; *see Willis v. State*, 352 So. 3d 602, 615 (¶38) (Miss. 2022) (A "defendant is entitled to have jury instructions given which present his theory of the case, but the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence").

¶39. The trial testimony in this case echoes *Brown*. Taylor not only testified that Culberson choked and strangled her, but the jury saw two photographs showing horrific bruising on the back of her neck and right under her ear. Exhibits 4 and 25 could have been reasonably interpreted to be impressions Culberson's fingers left on her neck.

¶40. Just as the defendant in *Brown*, Culberson merely denied he ever did such a thing. Culberson conceded that there was bruising on the back of Taylor's neck, but he claimed that was from when he pulled her hair, not from choking her. And when asked during cross-examination if he put his hands around her neck, Culberson testified, "No, no-no-no-no." This utter denial provides simply no basis in the record to give the jury a simple domestic violence instruction.

¶41. Culberson argues one should have been given, though, because of the numerous other

injuries Taylor suffered. Specifically, photographs showed bitemarks on the victim's face and arm—which Culberson admitted he inflicted—and she suffered a nightstick fracture to her arm.

¶42. But the problem still remains: those injuries have nothing to do with *strangulation*. Culberson requested a jury instruction advancing a theory of simple domestic violence pursuant to Mississippi Code Annotated section 97-3-7(3)(a)(i), arguing the evidence only established that he attempted "to cause or purposely, knowingly or recklessly" cause "bodily injury" to Taylor. But the "essential elements" of simple domestic violence *are not included* in the offense Culberson was charged with in Count I of his indictment, which pertains **only** to a defendant who "[s]trangles, or attempts to strangle another." Bitemarks on an arm have *nothing* to do with the central question before the jury on Count I: whether the defendant strangled or attempted to strangle Taylor.

¶43. Instead, this proof goes to a question *not asked* of the jury—whether Culberson attempted to cause serious bodily injury to her. But he was *not* indicted for that subsection of the aggravated domestic assault statute. He was indicted only for strangulation and attack by a deadly weapon (in this case, his car). So by trying to import the evidence of the two bitemarks and the nightstick fracture, Culberson would require a trial court to give an instruction on a *lesser-nonincluded* offense. But we are without the ability to require such instructions since the Supreme Court decided *Hye*.[3]

---

[3] Among other reasons, the Supreme Court overruled caselaw also because giving lesser-nonincluded instructions presented "a very real propensity to lead to 'unsound compromise verdicts.'" *Hye*, 162 So. 3d at 758-59 (¶26). Such a compromise verdict is especially insidious if a defendant in a case with allegations of aggravated domestic assault

15

¶44. Culberson supports his argument with a case from the Supreme Court reviewing the sufficiency of a conviction for simple domestic assault: *Eubanks v. State*, 341 So. 3d 896, 914 (¶61) (Miss. 2022). The crucial legal distinction between this case and *Eubanks* is that in *Eubanks* the trial court *gave* a jury instruction on simple domestic assault. *Id*. at 913 (¶61).

¶45. Furthermore, there is a meaningful factual distinction. In *Eubanks*, the defendant presented testimony explaining an alternative theory for the strangulation evidence. The defendant stated he "tried to pin her head to [his] chest to prevent her from swinging" at him but "that at no time did he choke [the victim]." *Id.* at 911 (¶46). Therefore, he admitted to a physical altercation involving the victim's neck but alleged circumstances less than a strangulation.

¶46. So Eubanks' argument on appeal was that the lesser-included instruction should not have been given because the evidence *in that case* did not warrant it. But unlike the defendant in *Eubanks*, here, Culberson asserted a blanket denial, completely refuting that he strangled Taylor. When asked on cross-examination if he put his hands around her neck, Culberson responded, "No, no-no-no-no." Therefore, the facts in this case are different and do not lend themselves to the same conclusion in *Eubanks*. And since the central legal question in *Eubanks* is different than the case at hand—where the instruction was *refused*—it provides no analytical support for the position Culberson asserts.

¶47. Ultimately, the proof in this case is starkly different than *Eubanks*. The victim

could get a misdemeanor instruction from proof unrelated to the charge before the jury.

testified, and the photographs showed, that she had been strangled. Unlike the defendant in *Eubanks*, who admitted pinning the victim's head, Culberson merely denied he ever strangled her.

¶48. Therefore, we conclude that without proof to support a lesser-included instruction to the specific charge of strangulation, and with the only proof unrelated to that charge, the trial court was correct to refuse the proposed instruction.

### B. Count II – Aggravated Domestic Violence with a Deadly Weapon

¶49. Culberson's indictment for Count II charged him with aggravated domestic violence under Mississippi Code Annotated section 97-3-7(4)(a)(ii) for causing or attempting to cause bodily injury to Taylor with a deadly weapon by driving his car into Taylor's car. Culberson argues that the trial court erred in refusing to give his lesser-included offense instruction D-7 for simple domestic violence for Count II, which provided:

> The Court instructs the jury that the jury may return a verdict of the lesser-included offense of simple assault if the jury finds that the defendant attempted to cause or purposely, knowingly, or recklessly caused bodily injury to another.

At the jury-instruction conference, the State noted that Culberson's defense for Count II was that the wreck "was an accident," which did not avail him of an instruction on simple domestic violence. As with Count I, the trial court found the crime for Count II would be "all or nothing" under the statute and refused the lesser-included instruction.

¶50. Culberson now claims he was entitled to a simple-assault instruction for this count as well because a reasonable jury could have found him not guilty of aggravated domestic

17

violence. In his view, the evidence showed he did not attempt to cause or "purposely or knowingly" cause bodily injury to Taylor with his car pursuant to the aggravated domestic violence statute; instead, the jury could find him guilty of simple domestic violence because he merely "recklessly" caused bodily injury to Taylor with his car. Alternatively, Culberson argues he could have "negligently" caused bodily injury to Taylor with his car under the simple assault statute.[4] We find both arguments without merit.

¶51. There was conflicting testimony on the cause of the wreck. Taylor testified that she was driving fast to evade Culberson, who was chasing her. She claimed that when he reached her car, Culberson intentionally "rammed" her, causing her car to go airborne and crash. Valarie's testimony corroborated Taylor's testimony—Culberson's car came alongside Taylor's car, "bumping" it and causing the wreck. In sharp contrast, Culberson testified that Taylor caused the wreck and that he was only chasing Taylor out of concern she was going to hurt herself. Culberson testified he came alongside her car to tell her to pull over. When she went faster, Culberson claimed his plan was to get in front of her car so he "could slam on his breaks" and make her stop, but he "never got around her." Instead, he testified that Taylor "was swerving" and hit his car, causing the wreck.

¶52. Our Supreme Court's decision in *Ford v. State*, 975 So. 2d 859 (Miss. 2008), is instructive. There, the court held that a defendant was not entitled to a jury instruction on

_____

[4] On appeal, Culberson also argues that the jury could have reasonably concluded that his car was not used as a deadly weapon if the jury had been presented with a simple domestic violence instruction. However, defense counsel did not present this argument to the trial court, nor was it part of his defense; therefore, it is waived. *See Robinson v. State*, 966 So. 2d 209, 213 (¶10) (Miss. Ct. App. 2007) ("[A] trial court will not be found in error on an issue upon which it was never requested to rule.").

simple assault as a lesser-included offense of aggravated assault by means of a deadly weapon when there was no evidence the defendant acted negligently because negligence is a required showing for simple assault when the defendant used a deadly weapon. *Id.* at 865 (¶15). In *Ford*, the defendant stabbed a co-worker in the eye with a steak knife during an altercation and claimed self-defense. *Id.* at 862 (¶2). Although charged with aggravated assault, she claimed the trial court erred in denying a jury instruction on simple assault. *Id.* at 864-65 (¶¶13-14). The Supreme Court reasoned that because the defendant used a deadly weapon, in order to warrant a jury instruction on simple assault, there must be evidence that she acted negligently in causing harm to the victim. *Id.* at 865 (¶15). However, it was undisputed that the defendant intentionally stabbed the victim. *Id.* Ultimately, the Supreme Court concluded that "[t]here is simply no evidence in the record that [the defendant] acted negligently." *Id.* Since "the evidence [could] only support a charge of aggravated assault, the trial court did not err in refusing to grant a jury instruction on the lesser-included offense of simple assault." *Id.*

¶53.    Just as in *Ford*, here the proof at trial did not meet the threshold. Because Culberson was indicted for using a "deadly weapon" to injure Taylor, under subsection 4(a)(ii) for aggravated domestic violence, the lesser-included instruction for simple domestic violence must be for "negligently" causing injury with a deadly weapon under subsection 3(a)(ii). Culberson, however, did not tender such an instruction. Instead, he requested instruction D-7, which tracks the language of simple domestic violence from subsection 3(a)(i)—when a person "purposely, knowingly or recklessly causing bodily injury to another." Because

instruction D-7 did not include injury with "a deadly weapon," it cannot be considered a lesser-included offense of aggravated domestic violence under 97-3-7(4)(a)(ii). Thus, the trial court properly refused the instruction.

¶54. Culberson acknowledges defense counsel did not tender a negligence instruction on simple domestic violence, but he claims the trial court should have advised counsel of the deficiency. We disagree. "The trial court has a duty to reform the tendered instruction or advise defense counsel of the perceived deficiencies" when the "instruction relates to a central feature of the case" and is deficient in form. *Mease v. State*, 539 So. 2d 1324, 1335 (Miss. 1989) (citing *Harper v. State*, 478 So. 2d 1017, 1022 (Miss. 1985)). That was not so here. Instruction D-7 was not "deficient in form," but was from the improper subsection. Therefore, the trial court did not err in its decision.

¶55. Moreover, even if Culberson had submitted a proper instruction on simple domestic violence with a deadly weapon, no evidence showed Culberson negligently caused the wreck—he either hit Taylor's car intentionally as she claims, or Taylor caused the accident by swerving into him, as Culberson claims. Therefore, a jury instruction based on simple domestic violence due to negligence was not warranted. Accordingly, the trial court did not err in refusing to give instruction D-7.

## II. Ineffective Assistance of Counsel

¶56. Relatedly, Culberson argues that his defense counsel was ineffective for failing to tender a jury instruction on Count II for simple domestic violence with a deadly weapon due to negligence under section 97-3-7(3)(a)(ii). Since we found such a jury instruction was not

warranted from the evidence, Culberson's counsel was not ineffective for failing to request it.

### III.    Admission of Prior Bad Acts of Domestic Violence

¶57.    Culberson asserts that the trial court erred in denying his motion to exclude evidence of his prior bad acts of domestic violence against Taylor and ex-girlfriend Neely. He claims the evidence was not admitted for a proper purpose and was highly prejudicial; therefore, his convictions should be reversed and the case remanded for a new trial.

¶58.    This Court's standard of review for the admission of evidence is abuse of discretion. *Smith v. State*, 326 So. 3d 510, 517 (¶17) (Miss. Ct. App. 2021) (citing *Boggs v. State*, 188 So. 3d 515, 519 (¶9) (Miss. 2016)). "We will not reverse unless an abuse of this discretion results in prejudice to a defendant." *Marbra v. State*, 904 So. 2d 1169, 1174 (¶14) (Miss. Ct. App. 2004).

¶59.    Generally, evidence of other crimes, wrongs, or acts is prohibited to prove a person's character in order to show he acted in accordance with that character. MRE 404(b)(1). However, such evidence may be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." MRE 404(b)(2). However, "[t]he purposes listed in Rule 404(b) are not exhaustive; they simply are examples of noncharacter purposes for which evidence of other crimes, wrongs, or acts may be admitted." *Boggs*, 188 So. 3d at 519 (¶11) (citing *Green v. State*, 89 So. 3d 543, 549 n.12 (Miss. 2012)). Before admitting prior-bad-acts evidence, the trial judge should filter the evidence through Mississippi Rule of Evidence 403, which

21

provides that the trial court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." MRE 403; *accord Boggs*, 188 So. 3d at 522 (¶19).

¶60.   Before trial, Culberson filed a motion in limine to exclude evidence of prior acts of domestic violence against Taylor and Neely.  The State responded that the prior bad acts against Taylor were admissible to show the instant crimes were not an accident.  Instead, they showed a pattern of domestic violence, while the prior aggravated domestic violence against Neely would show motive—when Culberson "feels his female dating partner has lied or cheated on him, he reacts in violence."  The trial court ruled the evidence of prior violence against Taylor was admissible to show motive and lack of accident, while evidence of prior violence against Neely was admissible to show "intent, motive, lack of mistake, all the above."  For both victims' testimony on Culberson's prior bad acts, the trial court granted an instruction that the jury consider the testimony for the limited purpose of showing motive, intent, absence of mistake or accident.

### A.    Taylor's Testimony

¶61.   Culberson argues his prior assault of Taylor in the woods was inadmissible under Rule 404(b).  He claims the incident did not show a motive—it only showed that Culberson was more likely to have acted violently in the instant crimes because he had acted violently toward Taylor in the past.

¶62.   For the evidence of the prior assault against Taylor, the trial court specifically found that the acts "show[ed] a pattern with this particular victim. . . . [I]t shows clearly this was

22

not an accident. It shows motivation . . . he had the same motivation multiple times," and it established a "motive for what allegedly happened in the counts set out in the indictment." Finally, the trial court found the probative value was not substantially outweighed by the danger of unfair prejudice under Rule 403, particularly with respect to motive. We agree.

¶63. Taylor's testimony about the May 2022 assault showed Culberson had a clear pattern of violent behavior toward her, which included strangulation. Their relationship became physically violent within a few weeks when, as Taylor described it, Culberson "almost killed her." Taylor testified that Culberson became angry in May 2022 for the same reason he did in October 2022—jealousy over other men. Taylor testified that Culberson bound her wrists and beat her for about thirty minutes. Taylor also testified that Culberson choked her until she passed out. This behavior not only shows Culberson had a pattern of assaulting and choking Taylor, but motive. The reason Culberson assaulted Taylor in both incidents was jealousy over other men. Neither assault was an accident. Additionally, during the instant assault—after a night of beating—the next morning Culberson told Taylor he was "taking her to woods" again; she became scared for her life and fled the house, knowing Culberson's previous conduct. Testimony of the earlier incident was necessary to show the jury Taylor's reason for fleeing. Culberson was actually threatening the same act again. Taylor's leaving motivated Culberson to chase her in his car, resulting in the wreck.

¶64. Culberson claims that even if his prior bad acts against Taylor were admissible under Rule 403, their probative value was outweighed by their prejudicial effect to his defense under Rule 403 because both assaults were so similar. We are not persuaded. It is the

23

similarity of the prior bad act and its threatened recurrence that caused it to be probative for the jury under Rule 403. The trial court did not abuse its discretion in finding Taylor's testimony about the May 2022 assault admissible under either Rule 404(b) or Rule 403.

### B. *Neely's Testimony*

¶65. Culberson also claims error in the trial court's admission under Rule 404(b) of ex-girlfriend Neely's testimony that he had previously acted violently toward her. Again, he claims her testimony would only show that since he had been violent with Neely in the past, he was more likely to have acted violent against Taylor in the instant case.

¶66. The trial court found the details of Neely's assault were similar enough to the instant assault to show "proper to show intent, motive, [and] lack of mistake." Further, the trial court found her testimony's probative value was not substantially outweighed by the danger of unfair prejudice under Rule 403. Again, we agree.

¶67. Neely's testimony about Culberson's assault was similar to Taylor's testimony regarding motive, intent, and lack of accident. Neely testified that she had been dating Culberson only for about three weeks when he "tried to kill" her. Culberson severely beat Neely in a rage one night when he went through her phone, as he did Taylor's phone later, and thought Neely had been communicating with another man. Neely testified that for several hours, Culberson, hit, bit, stabbed, and choked her—"nine hours of basically torture." Culberson tried to prevent Neely from escaping, as he had done to Taylor in both assaults. As with Taylor's first assault, Culberson planned to take Neely to his grandmother's house to hide her injuries from others, but Neely escaped. The incidents

24

show a lack of accident as well. Evidence of biting would also show Culberson's modus operandi and that his biting Taylor was not an accident or mistake.

¶68. Further, under Rule 403, the trial court properly found the probative value of Neely's testimony was not substantially outweighed by any danger of unfair prejudice. Neely's testimony showed Culberson had a history of beating, biting, and strangling his girlfriends. The prior offense was very similar to those of this case.

¶69. The aggravated domestic violence cases of *Johnson v. State*, 204 So. 3d 763 (Miss. 2016), and *Taylor v. State*, 362 So. 3d 1117 (Miss. Ct. App. 2019), are instructive. In *Johnson*, the supreme court found the trial court did not abuse its discretion in admitting offense reports detailing the defendant's prior acts of domestic violence. *Johnson*, 204 So. 3d at 769 (¶17). The trial court found the reports were admissible under Rule 404(b) to prove intent, motive, and plan. *Id.* The trial court noted that all the defendant's prior assaults were against women, he initiated contact and was the aggressor, and he had a relationship with all of them. *Id.* Further, under Rule 403, the supreme court found the trial court correctly found the prior offenses were "very serious and akin to what happened in this case and therefore probative for the jury. . . ." *Id.* at 770 (¶19).

¶70. In *Taylor*, this Court affirmed the trial court's admission of prior bad acts by the defendant under Rule 404(b). 362 So. 3d at 1121 (¶9). Testimony of the defendant's former paramour was admitted when the defendant was on trial for severely beating his wife, who informed him she was filing for a divorce. *Id.* at 1119 (¶3). The paramour testified that the defendant had violently attacked her after she broke off their relationship. *Id.* at 1120 (¶7).

25

Our Court, relying on *Johnson*, found the bad-acts evidence was properly admitted for noncharacter purposes under Rule 404(b) to show "motive, intent, and a common scheme or plan." *Id.* at 1121 (¶¶8-9). Further, this Court agreed with the trial court's finding that the prior bad acts were properly admitted under Rule 403 because the paramour's testimony was "very akin to what happened in this case"; thus, the high probative value was not substantially outweighed by unfair prejudice. *Id.* at (¶12).

¶71. Culberson argues that *Johnson* and *Taylor* are inapplicable because they improperly relied on child sex-abuse cases to hold that prior domestic-violence evidence is admissible: *Green v. State*, 89 So. 3d 543 (Miss. 2012); *Gore v. State*, 37 So. 3d 1178 (Miss. 2010); *Derouen v. State*, 994 So. 2d 748 (Miss. 2008). Culberson claims "*Derouen* and its progeny must be limited to cases in which the defendant stands trial for sexual assault"; otherwise, the exceptions to Rule 404(b)(2) will "swallow the entirety of Rule 404" and "render the whole of Rule 404 meaningless." We are not persuaded by Culberson's argument. No such limitation exists in Rule 404(b)(2). Further, *Derouen* did not create a specific rule for the admission of similar crimes for sexual assault cases but overruled a per se exclusion of prior sexual offenses in such cases, returning the admissibility of such evidence to a determination under Rule 404(b) and Rule 403. *Derouen*, 994 So. 2d at 756 (¶20).

¶72. As to whether the jury could hear the details of Culberson's 2017 conviction for aggravated domestic violence against Neely, Culberson claims the trial court failed to conduct an on-the-record Rule 609 balancing test as required under *Peterson v. State*, 518

26

So. 2d 632, 638 (Miss. 1987).[5] At the hearing on the motion in limine, the trial court ruled

Neely's prior bad-acts testimony was admissible but explained that while Neely could testify

to the facts of her assault, she could not testify about Culberson's conviction for it. She did

not. Later, during a bench conference after Culberson decided to testify, the trial court

explained to Culberson that for his two prior convictions to be admitted into evidence, the

trial court had to conduct a *Peterson* hearing. The trial court continued that if the

convictions were allowed into evidence after the *Peterson* analysis, Culberson could be

questioned about their details. Alternatively, Culberson could waive his *Peterson* hearing

and stipulate to his two prior convictions, and then he could not be questioned about the

details of the convictions or what they were. Culberson chose to stipulate to the convictions

and waive his *Peterson* hearing. However, the trial court warned Culberson that despite his

stipulation and waiver, if his testimony "opens the door" to the facts about his prior offenses,

"it's free game." During Culberson's cross-examination, he opened the door to details of

his prior conviction for aggravated domestic violence when he testified that Neely was

"lying" about his assaulting her, even though he pleaded guilty to aggravated domestic

violence. The trial court allowed the State to question him on a limited basis about that

---

[5] "[C]onvictions offered under 609(a)(1) to impeach a party must be analyzed under the guidelines set forth in *Peterson v. State*, 518 So. 2d 632 (Miss. 1987) to determine if the probative value is great enough to overcome the presumed prejudicial effect to that party, and findings should be made on the record by the judge." MRE 609 advisory committee note. "The *Peterson* factors include (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *Ross v. State*, 308 So. 3d 885, 889 (¶13) (Miss. Ct. App. 2020) (citing *Peterson*, 518 So. 2d at 636).

conviction. In reviewing the transcript, we find the trial court counseled Culberson repeatedly about his options regarding the admission of his prior felony convictions. Accordingly, we find no error regarding the admission of Culberson's prior conviction against Neely or his waiver of a *Peterson* hearing.

¶73. We conclude that the trial court did not abuse its discretion in admitting Neely's testimony about Culberson's prior bad acts against her under Rule 404(b) or Rule 403.

### IV. Habitual Offender Status

¶74. In Culberson's final issue, he argues the trial court improperly sentenced him as a violent habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2020) because the body of his indictment cited section 99-19-81 (Rev. 2020). However, an exhibit attached to the indictment cited the correct Code section with the details of his prior felonies. He claims that because the body of the indictment cited section 99-19-81, he did not receive sufficient notice of the penalty under Mississippi Rule of Criminal Procedure 14.1(b), which deals with the State's requirements for enhanced punishment for subsequent offenses in an indictment. Culberson requests this Court vacate the habitual portion of his sentence under section 99-19-83 and remand for resentencing under section 99-19-81.

¶75. "Whether an indictment was improperly amended is a question of law, which we review de novo." *Roberson v. State*, 287 So. 3d 219, 230 (¶24) (Miss. Ct. App. 2017). "In order to sentence a defendant as a habitual offender, the accused must be properly indicted as a habitual offender, the prosecution must 'prove the prior offenses by competent evidence,' and the defendant must 'be given a reasonable opportunity to challenge the

28

prosecutor's proof.'" *Hull v. State*, 174 So. 3d 887, 900-01 (¶43) (Miss. Ct. App. 2015) (quoting *Grayer v. State*, 120 So. 3d 964, 969 (¶18) (Miss. 2013)). Mississippi Rule of Criminal Procedure 14.4(a) provides: "For good cause shown, indictments may be amended as to form but not as to the substance of the offense charged. Amendment may be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." Mississippi Rule of Criminal Procedure 14.1(b) provides:

> **(b) Enhanced Punishment for Subsequent Offenses.** When an indictee may be eligible for enhanced punishment because of one (1) or more prior convictions, the State shall *either*:
>
> > (1) *specify such prior conviction(s) in the indictment*, identifying each such prior conviction by the name of the crime, the name of the court in which each such conviction occurred and the cause number(s), the date(s) of conviction, and, if relevant, the length of time the accused was incarcerated for each such conviction; *or*
> >
> > (2) after indictment, and at least thirty (30) days before trial or entry of a plea of guilty, file with the court formal notice of such prior conviction(s). The notice shall be served upon the defendant or the defendant's attorney and shall contain the same information specified in subsection (1) of this rule. An untimely-filed formal notice is permitted only when the thirty (30) day requirement is expressly waived, in writing, by the defendant. Clerical mistakes in such formal notice may, with leave of the court, be amended prior to the pronouncement of sentence.

(Emphasis added).

¶76. The indictment, filed in December 2022, erroneously stated Culberson was being charged under section 99-19-81 in the indictment's heading and at the end of it. The body of the indictment did not cite any prior felonies; however, it referenced an "Exhibit 'A'

29

attached hereto." The exhibit was entitled "Violent Habitual Offender Attachment" and cited section 99-19-83 and the possibility of a life sentence upon conviction. Also, the exhibit listed the details of the two prior convictions of motor vehicle theft in 2012 and Neely's aggravated domestic assault in 2017. *See supra* note 1.

¶77. At a pretrial hearing on April 11, 2023, the State made clear its intentions to proceed under section 99-19-83. Culberson asked which habitual offender section the State was proceeding under, adding that he had been "under the impression . . . this entire time" that he was being charged under 99-19-81. However, the prosecutor informed Culberson that he was indicted under 99-19-83, that he was "facing life on both of those charges," and he would be tried "as an 83 habitual." The prosecutor explained that the indictment's cite to section 99-19-81 was a scrivener's error that could be amended—the correct section was in Exhibit A. The trial court informed Culberson that he could enter a guilty plea any time prior to trial as "an open plea."

¶78. On April 14, 2023, the State filed a motion to amend the indictment with the correct habitual offender section 99-19-83, claiming the amendment was one of form and not substance under Rule 14.4. The motion claimed that Culberson was placed on proper notice that he was being tried under section 99-19-83 by the language of Exhibit A, as well as the discussion at the motion hearing on April 11, 2023. On April 25, 2023, the trial court addressed the motion at a pretrial hearing. Defense counsel argued that amending the indictment "at this point" would violate Culberson's right to procedural due process. The trial court did not agree and granted the State's motion, finding the citation to section 99-19-

30

81 in the body of the indictment was a scrivener's error.

¶79. Culberson admits that Exhibit A to his indictment specified his two prior felonies that the State would use to prove his violent habitual-offender status, and the exhibit met the requirements of Rule 14.1(b)(1). However, he complains that because the State did not amend the body of the indictment more than thirty days before trial under Mississippi Rule of Criminal Procedure 14.1(b)(2), he did not receive sufficient notice of the applicable minimum and maximum penalties.

¶80. Rule 14.1(b) allows the State to seek habitual-offender enhancement by either including the defendant's prior convictions in the indictment or, after indictment, by filing a formal notice or amendment at least thirty days before trial. MRCrP 14.1(b) cmt. Here, the State properly proceeded under the first option of Rule 14.1(b)(1) by indicting Culberson as a habitual offender; therefore, the thirty-day requirement under Rule 14.1(b)(2) was not required. We note the Mississippi Supreme Court has held that "it [is] not necessary for the State to specify in the indictment which section of the habitual [offender] statute [it is] proceeding under." *Ellis v. State*, 469 So. 2d 1256, 1258 (Miss. 1985); *Frazier v. State*, 907 So. 2d 985, 990 (¶12) (Miss. Ct. App. 2005).

¶81. Furthermore, regardless of the error in the body of his indictment, Culberson had sufficient notice of his violent habitual offender status, which was specified in the attachment (Exhibit A) when it was filed in December 2022. His defense counsel also confirmed at the hearing on the State's motion to amend the indictment on April 25, 2023, that when he was assigned to Culberson's case (in January 2023), it "was [counsel's] belief

31

[Culberson] was looking at life without the possibility of parole." Moreover, the body of the indictment was properly amended on that day to reflect the correct habitual-offender section. The State provided adequate notice to Culberson that it intended to proceed under section 99-19-83.

¶82. Culberson also claims that because his prior felony convictions were described in an exhibit attached to the indictment, he was not actually indicted as a violent habitual offender. However, it is a common practice to attach to an indictment exhibits listing prior qualifying felony convictions. *See Small v. State*, 303 So. 3d 704, 712 (¶33) (Miss. 2020); *Taylor v. State*, 838 So. 2d 339, 340 (¶6) (Miss. Ct. App. 2002). This argument is without merit as well.

¶83. The trial court properly granted the State's amendment to the body of the indictment to reflect the correct habitual-offender section. Exhibit A properly detailed Culberson's prior felony convictions. Culberson had sufficient notice that he could receive life imprisonment; thus, the court did not err in sentencing Culberson under section 99-19-83.

## CONCLUSION

¶84. The trial court did not err in refusing to give Culberson's lesser-included-offense jury instructions for simple domestic violence in Count I or Count II. Culberson's trial counsel was not ineffective for failing to submit an instruction for Count II on simple domestic violence for negligence. The evidence of Culberson's prior bad acts of domestic violence against Taylor and Neely were properly admitted. Finally, the trial court did not err in sentencing him as a violent habitual offender. For the foregoing reasons, we affirm

32

Culberson's convictions and sentences for Count I and Count II.

¶85.    **AFFIRMED.**

**CARLTON, P.J., LAWRENCE, WEDDLE AND ST. PÉ, JJ., CONCUR. BARNES, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WILSON, P.J., WESTBROOKS, McDONALD AND EMFINGER, JJ.**

**BARNES, C.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶86.    I respectfully dissent in part from the majority's opinion. The evidence presented at trial entitled Tyler Culberson to a jury instruction on simple domestic violence for the charge of strangulation against Taylor Rigby in Count I. Neither the State nor the majority addresses the issue that was presented to, and ruled upon, by the trial court: whether simple domestic violence under section 97-3-7(3)(a)(i) is a lesser-included offense of aggravated domestic violence by strangulation under section 97-3-7(4)(a)(iii). The State did not argue, as it now does on appeal, that Culberson's actions did not warrant a lesser-included offense instruction; instead, the State argued that no such instruction was "available" under the law.

¶87.    At the jury instruction conference, defense counsel argued the evidence of bite marks and bruises on Rigby would not rise to the level of aggravated domestic violence but would justify an instruction on simple domestic violence. The State countered that Culberson was "not indicted for aggravated [domestic violence] because of serious bodily injury for Count I [but] for strangulation which is, per se, aggravated [domestic violence]. *There is no lesser included offense for a lesser type of strangulation.*" (Emphasis added). If the jury found Culberson strangled or attempted to strangle Rigby, the State claimed that the defendant would be guilty of aggravated domestic violence; conversely, if the State failed to prove one

of the elements of strangulation, Culberson would be acquitted on this count. The State explained that this situation differed from being indicted under the "serious bodily injury" aggravated domestic violence subsection, where, if all the elements were found except serious bodily injury, the defendant could be found guilty of simple domestic violence, and thus a lesser-included offense instruction would then be proper. The State concluded that there was "no lesser-included available to [Culberson]" under the strangulation subsection of aggravated domestic violence. The trial court agreed, finding the crime was "all or nothing" and refused to give the lesser-included instruction for Count I.

¶88. The State indicted Culberson under subsection (iii) of the aggravated domestic violence statute and not the other subsections relating to general bodily injury. In the statutory framework for domestic violence, there is no corresponding subsection for simple domestic violence by strangulation. Subsection (3)(a)(iii) applies when the defendant "[a]ttempts by physical menace to put another in fear of imminent serious bodily harm," not a lesser type of strangulation.

¶89. In support of a simple domestic violence jury instruction, Culberson quotes *Eubanks v. State*, 341 So. 3d 896 (Miss. 2022), for the proposition that "simple assault domestic violence is a lesser-included offense of aggravated assault domestic violence." *Id.* at 913-14 (¶63) (citing *Williams v. State*, 119 So. 3d 404, 407 (¶3) (Miss. Ct. App. 2013)). In *Eubanks*, the Mississippi Supreme Court affirmed the defendant's conviction for simple domestic violence after being charged with aggravated domestic violence. *Id.* at 902 (¶¶1, 3). The victim alleged that the defendant "pinned her down, that she could not move nor

could she breathe," and he choked her. *Id.* at 910 (¶44). The defendant, however, testified that he did not choke her but, rather, held her wrists and pinned her down so she could not hit him. *Id.* at 911 (¶46). The defendant was charged with aggravated domestic violence. *Id*. at 902 (¶3). Although the opinion does not specify, the record reflects that the defendant was charged with "strangling or attempting to strangle" the victim. The trial court gave the State's instruction on simple domestic violence, and the jury convicted the defendant of this crime. *Id.* at 902, 913 (¶¶3, 61). On appeal, the defendant raised numerous issues, one being whether the trial court erred in giving the State's simple domestic violence instruction because the evidence did not warrant it. *Id.* at 902 (¶3). The Mississippi Supreme Court held that "[h]ere, the evidence supports a lesser-included offense instruction of simple assault domestic violence. The jury, in weighing the evidence presented, could have found that Eubanks's actions *fell short of strangulation but did cause* [*the victim*] *bodily harm*." *Id.* at 914 (¶65) (citing *Downs v. State*, 962 So. 2d 1255, 1261 (¶23) (Miss. 2007);[6] Miss. Code Ann. § 97-3-7(3)(a)).

¶90. Culberson argues that *Eubanks* applies here and that the trial court should have given his simple domestic violence instruction D-6, as there was a conflict of evidence about whether he strangled Rigby and how her arm broke. Further, Culberson admitted to biting Rigby on the forehead and both arms, which could be considered simple domestic violence. Culberson points out that evidence of biting has been held sufficient to support a conviction

---

[6] The pertinent issue in *Downs* was whether the defendant, who was indicted for robbery, was entitled to a jury instruction on simple assault as a lesser-included offense of robbery. *Downs*, 962 So. 2d at 1261 (¶¶11, 19).

for simple domestic violence by "purposely, knowingly or recklessly caus[ing] bodily injury" under section 97-3-7(3)(a)(i), which is the language tracked by his instruction D-6. *See Anderson v. State*, 102 So. 3d 304, 310 (¶21) (Miss. Ct. App. 2012) (The State proved the defendant committed simple domestic violence by biting the victim.).

¶91.    Culberson acknowledges that in *Brown*, this Court held a trial court properly refused a simple domestic violence instruction when the defendant was charged with aggravated domestic violence by strangulation. *Brown v. State*, 285 So. 3d 671, 676-77 (¶¶13, 19) (Miss. Ct. App. 2019). There, the victim testified that her boyfriend choked her during an altercation, tightening his grip around her neck so she could not breathe. *Id*. at 675 (¶5). The defendant, however, denied the strangulation. *Id*. at 676 (¶10). The trial court did not give the defendant's simple domestic violence instruction because the defendant denied even touching the victim; thus, no evidence supported a conviction for simple domestic violence. *Id*. at 677 (¶17). This Court concluded that in *Brown*, "[b]ecause a reasonable jury could not have found Brown guilty of simple domestic violence, the trial court's rejection of a lesser-included instruction was proper." *Id*. at (¶19). Here, Culberson distinguishes *Brown* because there was evidence of other simple domestic violence injuries, such as biting. While the majority claims "the trial testimony in this case echoes *Brown*," it does not. Culberson did not deny ever touching Rigby; he only denied strangling her—an important distinction regarding this issue.

¶92.    On appeal, the State claims that there is no evidence of simple domestic violence, citing *Brown* as analogous. Importantly, the State does not attempt to distinguish, nor even

cite, *Eubanks*.

¶93. The supreme court's legal analysis in *Eubanks* on this issue is brief. In supporting the statement Culberson relies upon (that "[h]ere, simple assault domestic violence is a lesser-included offense of aggravated assault domestic violence"), the supreme court cited this Court's opinion *Williams v. State*, 119 So. 3d 404 (Miss. Ct. App. 2013), with no further analysis. *Williams* involved the appeal of a denial of post-conviction relief, where the defendant pleaded guilty to aggravated domestic violence under current subsection (ii) of section 97-3-7(4)(a) ("serious bodily harm with a deadly weapon"); *Williams* did not deal with aggravated domestic violence by strangulation. *Williams*, 119 So. 3d at 406 (¶2). The court's statement in *Eubanks* that the defendant's "actions fell short of strangulation but did cause [the victim] bodily harm" indicates a lesser-included offense exists for aggravated domestic violence by strangulation. *See Eubanks*, 341 So. 3d at 914 (¶65).

¶94. At trial, the State's strategy was one of "all or nothing" for strangulation; however, there was evidence of other acts taken toward Rigby that "fell short of strangulation." Culberson denied strangling Rigby but admitted to biting her. As with the State, the majority makes no attempt to support the State's position at trial that strangulation is "all or nothing" aggravated domestic violence. Based on the evidence, the jury could have found some of Rigby's injuries were related to the indicted conduct (strangulation) but "fell short," as stated in *Eubanks*. Culberson completely denied strangling Rigby, like the defendant in *Eubanks*. However, the jury could have believed an alternative theory about the strangulation injuries, as they did in *Eubanks*. There, the defendant admitted that to prevent

37

the victim from hitting him, he grabbed both of her wrists, pinning her head against his chest. *Eubanks*, 341 So. 3d at 911 (¶46). Similarly, Culberson admitted to bruising the back of Rigby's neck, alleging it was from pulling her hair during consensual rough sex.[7] Rigby testified that Culberson had one hand around her neck and the other on her forehead, holding her down and restricting her airflow while he bit her forehead. The jury could have found that Culberson did not strangle Rigby but that her injuries were due to a lesser assault during this confrontation. This finding would be in keeping with the medical evidence. Dr. Patch testified that Rigby did not allege strangulation at the hospital and actually denied having neck pain. Dr. Patch observed no bruising, contusions, or swelling to Rigby's neck in the emergency room but opined it was "still possible" she had been strangled. The jury could have found some injury from the confrontation caused by something less than strangulation.

---

[7] The State simply dismisses Culberson's statements regarding the bruises to the back of Rigby's neck as insufficient to warrant a simple domestic assault instruction as he claimed it was done during consensual rough sex and, therefore, did not amount to simple assault. However, *Eubanks* made clear:

> [W]hen the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony. This wise rule applies with equal force to the [S]tate's witnesses and the appellant's witnesses, including the appellant himself. We have repeatedly held that in a criminal prosecution the jury may accept the testimony of some witnesses and reject that of others, and that they *may accept in part and reject in part the evidence* on behalf of the [S]tate or *on behalf of the accused*. In other words, the credibility of witnesses is not for the reviewing court.

*Eubanks*, 341 So. 3d at 911 (¶48) (emphasis added) (quoting *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980)). Thus, the jury could have found that Culberson caused the bruising to the back of the neck by means other than strangulation but not with consent.

¶95.    I find no meaningful way to distinguish *Eubanks*. Therefore, I conclude that the trial court erred in denying Culberson's lesser-included offense instruction D-6 for Count I.

**WILSON, P.J., WESTBROOKS, McDONALD AND EMFINGER, JJ., JOIN THIS OPINION.**